DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**TRIBECA AESTHETIC MEDICAL SOLUTIONS, LLC.,**
Appellant,

v.

**EDGE PILATES CORPORATION,** a Florida corporation, and
**BAYOU METO, INC.,** a Florida corporation,
Appellees.

No. 4D16-648

[October 25, 2017]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Carlos A. Rodriguez, Judge; L.T. Case No. 10-20735 (14).

Marc A. Silverman and Michael R. Kassower of Frank, Weinberg & Black, P.L., Plantation, for appellant.

Mark Perlman of Mark Perlman, P.A., Hallandale Beach, for appellee, Edge Pilates Corporation, a Florida corporation.

John F. Phillips, Fort Lauderdale, for appellee, Bayou Meto, Inc., a Florida corporation.

GROSS, J.

This case has been before this court on numerous occasions. This is the third time the case is being reversed and remanded for further proceedings.

The underlying facts are fully set forth in *Tribeca Aesthetic Medical Solutions, LLC v. Edge Pilates Corp.*, 82 So. 3d 899 (Fla. 4th DCA 2011), and *Edge Pilates Corp. v. Tribeca Aesthetic Medical Solutions, LLC,* 162 So. 3d 246 (Fla. 4th DCA 2015) (*Tribeca I* and *Tribeca II*). In short, Bayou Meto (the Landlord) leased a building to Edge Pilates (the Tenant), and Edge Pilates subleased a portion of the premises to Tribeca (the Subtenant). Under the agreement between the Tenant and the Subtenant, an unspecified portion of the rent was for marketing services to be provided by the Tenant.

A dispute arose when the Tenant vacated the premises before the expiration of its lease. The Subtenant claimed that its business was dependent on the traffic generated by the Tenant and refused to pay rent on the theory that the Tenant failed to provide marketing services as required by the lease.

The Tenant sued the Subtenant for eviction and money damages and the Subtenant counterclaimed for unjust enrichment. As required by section 83.232, Florida Statutes (2010), the Subtenant paid the monthly rent into the court registry for the duration of the term of the lease.[1] This deposit included the amount which the Subtenant claimed was earmarked for marketing services.

The Landlord intervened asserting its entitlement to the "rent" in the court registry. In *Tribeca I*, this court held that the Landlord's right to the registry funds was subordinate to the main action. *Tribeca I*, 82 So. 3d at 901. However, because the Subtenant was still in possession of a portion of the premises, this court held that the Landlord may be entitled to disbursement under section 83.232(1), Florida Statutes (allowing disbursement where a landlord is in danger of losing the premises or suffering other hardship resulting from loss of rental income from the premises). *Id.*

On remand, the Landlord returned some of the disbursed funds to the registry and began to receive hardship payments under section 83.232(1). The Tenant and the Subtenant proceeded to the non-jury trial which resulted in the *Tribeca II* appeal. In *Tribeca II*, this court found that the Tenant had established its cause of action for eviction and the Subtenant had established its cause of action for unjust enrichment. This court found the damage award of $100,000 to the Subtenant was not supported by competent, substantial evidence, and remanded "for the purpose of conducting an evidentiary hearing to determine the apportionment of rent monies between the value of the property and the value of the marketing services." *Tribeca II*, 162 So. 3d at 250.

On remand, the Landlord again claimed entitlement to the rent in the registry. Following an evidentiary hearing, the trial court determined that the Tenant owed the Landlord $143,023.60 in unpaid rent and ordered the clerk of court to disburse that amount from the registry directly to the Landlord.[2] The court found that the money in the registry "has been rent"

---

[1] The Tenant-Subtenant lease ran from August 1, 2008 to November 30, 2012.
[2] After the disbursement to the Landlord, there was approximately $6,000 left in the registry.

- 2 -

and that any issue remaining in the case between the Tenant and the Subtenant should not delay "the Intervenor/Landlord's entitlement to the rent in the court registry at this time." The Subtenant appeals.

We find that the trial court did not err in finding that the funds in the registry represent "rent" — the error was in finding that the funds, in the first instance, represented rent *owed to the Landlord*. In fact, the funds consisted of disputed rental payments to be allocated between the Tenant and the Subtenant. *Tribeca II*, 162 So. 3d at 250. During the pendency of this case, the Landlord's only independent claim to the funds was the hardship claim under section 83.232(1).

We again remand for the trial court to conduct an evidentiary hearing to determine the apportionment of rent paid by the Subtenant between the value of the property and the value of the marketing services. *Tribeca II*, 162 So. 3d at 250. We clarify that the Subtenant is entitled to recover from the registry the value of its claim for unjust enrichment (the marketing services). After disbursement to the Subtenant, the Tenant is entitled to the remaining funds in the registry. To the extent that the Tenant owes rent to the Landlord, the Landlord is entitled to claim against any funds in the registry, after the disbursement to the Subtenant.

Disbursement to the Landlord was error because the Landlord was simply an intervenor with no independent claim to the funds. Its claim, if any, is subordinate to the main action. *Tribeca I*, 82 So. 3d at 901. To be clear, the Landlord cannot recover from the registry any more than the Tenant can recover. Upon issuance of the mandate, the Landlord shall return the disbursed funds ($143,023.60) to the registry.

*Reversed and remanded.*

CIKLIN and KLINGENSMITH, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***